RECEIVED
JAN 12 2017
CLERK, U.S.D.C.
CHEYENNE, WYOMING

to who it my concern I would like to give the courts permission to keep my sister marisol Rodriguez posted and up to date on whats going on in this case her number is 307-254-2409 thanks for your time much Rspect

I will be sending more documents can you make copys of them and send them back thank you

:)

IN THE CIRCUIT COURT, FIFTH JUDICIAL DISTRICT
PARK COUNTY, WYOMING

| STATE OF WYOMING, | Criminal Docket No. # 8 |
|---|---|
| Plaintiff, | |
| vs. | |
| ROGELIO M. RODRIGUEZ JR., | → not my name |
| Defendant. | on the affidavite |

## AFFIDAVIT OF PROBABLE CAUSE

THE UNDERSIGNED, BEING FIRST DULY SWORN UPON OATH, DEPOSES AND STATES:

1. I, Darrell Steward, am employed by the Wyoming Division of Criminal Investigation, as a Special Agent.

2. On Monday, October 20, 2014, CI #14-063 (hereinafter referred to as CI) — 2 years ago — contacted Agent Fish and advised that Michael Rosacci had just contacted CI and offered to sell CI one gram (1gm) quantities of methamphetamine for one hundred fifty dollars ($150.00) each.

3. On Monday, October 20, 2014, at approximately 6:06 p.m., Agent Fish received a cellular telephone call from CI regarding a controlled purchase of methamphetamine from Michael Rosacci. During the course of the telephone conversation, CI stated substantially as follows: CI stated Rosacci had contacted CI and asked if CI wanted any dope, which CI knew to mean methamphetamine. CI told Rosacci that CI was interested in purchasing one gram (1gm) of methamphetamine from Rosacci, but would call Rosacci back to let him know. CI explained to Agent Fish Rosacci normally charged one hundred fifty dollars ($150.00) for one gram (1gm) quantities of methamphetamine. Agent Fish told CI that she would check the availability of the other Agents and would call CI back.

*[handwritten margin notes: "In my preliminary hearing it was said he pleaded guilty to this charge"]*

*[handwritten notes at bottom: "all kinds of names mentioned but not one of them is my name the don't even know who this 'Mexican with tatoos' is or she me wears is not my name Racial Profile I'm not an illegal alien"]*

4. After contacting the other Agents, Agent Fish called CI back. CI agreed to assist the Wyoming Division of Criminal Investigation with a controlled purchase of one gram (1gm) of methamphetamine from Rosacci, in Cody, Park County, Wyoming. Agent Fish told CI that the Agents would meet with CI and CI #14-070 (hereinafter referred to as CI2) at a pre-determined meeting location in Cody, at approximately 7:00 p.m.

5. At approximately 6:33 p.m., Agent Fish received another cellular telephone call from CI regarding the controlled purchase from Rosacci. During the telephone conversation, CI stated substantially as follows: Rosacci had contacted CI and was in a hurry to leave Cody, to travel to Powell, Wyoming. Rosacci told CI that he was at the Maverik Country Store, located at 2321 Big Horn Avenue, in Cody.

6. At approximately 6:38 p.m., Agent Fish contacted me and advised that Rosacci was currently at the Maverik Country Store on Big Horn Avenue and was in a hurry to leave. Agent Fish requested I respond immediately to the meeting location to conduct a recorded telephone call with CI to Rosacci and to begin preparation for the controlled purchase.

7. At approximately 6:45 p.m., I met with CI at the pre-determined meeting location in Cody and instructed CI to place a recorded telephone call to Rosacci, at (307) 250-2398, regarding the controlled purchase of one gram (1gm) of methamphetamine from Rosacci. During the course of the recorded telephone conversation, Rosacci stated substantially as follows: Rosacci and CI greeted. CI told Rosacci that CI was just leaving the bank with the money and said he/she would be at Rosacci's location in a minute. CI then asked Rosacci if the methamphetamine was "one fifty", meaning one hundred fifty dollars ($150.00). Rosacci said, "Yeah, one five." CI agreed and terminated the telephone call. The recorded telephone conversation was terminated at approximately 6:47 p.m.

8. At approximately 6:47 p.m., I searched CI's person for controlled substances, currency and/or weapons and then searched CI's vehicle for controlled substances, currency and/or weapons. None of these items were located. Agent Fish searched CI2's person for controlled substances, currency and/or weapons. None of these items were

located. I provided CI with one hundred fifty dollars ($150.00) from my Wyoming State Buy Funds.

9. At approximately 6:53 p.m., I prefaced a miniature wireless transmitter with the date and time and provided it to CI, who placed it in his/her clothing.

10. At approximately 6:53 p.m., the CIs left the meeting location, en route to the Maverik Country Store, in Cody. At approximately 6:57 p.m., the CIs arrived at the Maverik Country Store and parked in the parking lot. Rosacci and a male, later identified as Rogelio "Roy" Rodriguez, arrived in a blue mini-van and parked next to the CIs at approximately 6:59 p.m. Rosacci told CI that CI would have to follow them to Ralston, Wyoming, to obtain the methamphetamine, as they had already sold the other methamphetamine. Rosacci and Rodriguez left the Maverick parking lot and traveled to the Good2Go Convenience Store parking lot in Ralston, Wyoming. The CIs followed them in the CIs' vehicle and met with Rosacci and Rodriguez there, where they waited for quite some time for Rosacci and Rodriguez's source of methamphetamine to arrive with the methamphetamine. At approximately 8:38 p.m., Rodriguez met with the source of methamphetamine behind the Heart Mountain Pub and obtained the methamphetamine. Rodriguez then returned to the Good2Go Convenience Store parking lot and provided the methamphetamine to CI at approximately 8:42 p.m. The CIs traveled to a meeting location west of Ralston where Agent Fish obtained the miniature wireless transmitter containing the recording of the controlled purchase and a small plastic bag (evidence item #1) containing the suspected methamphetamine (evidence item #1a) from CI. The CIs then returned to the original pre-arranged meeting location at approximately 9:20 p.m.

11. The Agents maintained audio and/or visual surveillance of CI and CI2 from the time the CIs left the pre-arranged meeting location, during the controlled purchase and until the CIs arrived back at the meeting location.

12. At approximately 9:21 p.m., I searched CI's person and Agent Fish searched CI2's person for controlled substances, currency and/or weapons. None of these items

were found. Agents Herrmann and I searched the CIs' vehicle for controlled substances, currency and/or weapons. None of these items were found.

13. At approximately 9:25 p.m., I conducted a recorded interview with CI regarding the events of the controlled purchase of one gram (1gm) of methamphetamine from Rosacci and Rodriguez in Park County, Wyoming on October 20, 2014. During the course of the interview, CI stated substantially as follows: At approximately 5:45 p.m., CI was returning to Cody after getting off work. CI missed a cellular telephone call from Rosacci. Rosacci then called CI again. CI answered the telephone call. Rosacci told CI he had some methamphetamine available for purchase. CI told Rosacci CI might be interested in a little while. Rosacci told CI to call him if CI decided he/she wanted some of the methamphetamine. After ending the call with Rosacci, CI immediately contacted Agent Fish to arrange a controlled purchase of methamphetamine from Rosacci. After CI and CI2 met with me, CI made a recorded call to Rosacci. CI asked if Rosacci still had methamphetamine available. Rosacci told CI he had one gram (1gm) left and for CI to meet him at the Maverik Country Store. CI asked if the price was still one hundred fifty dollars ($150.00). Rosacci stated it was. After the CIs were searched and were provided with the one hundred fifty dollars ($150.00) from my Wyoming State Buy Funds, the CIs traveled to the Maverik Country Store parking lot on Big Horn Avenue. When the CIs arrived, Rosacci was not there. CI called Rosacci, who stated he had just left, as he had to go meet someone and told CI he would be right back. When Rosacci arrived, he parked next to the CIs vehicle. CI walked over to the passenger side of Rosacci's vehicle. There was a male named "Roy" (Rogelio Rodriguez) sitting in the passenger side who CI had never met before. CI walked around to the driver's side of the vehicle to speak with Rosacci. Rosacci then told CI he had just gotten rid of the last gram of methamphetamine and Rosacci was going to obtain more methamphetamine in Ralston. Rosacci offered to let the CIs follow him and Rodriguez to Ralston to obtain the one gram (1gm) of methamphetamine. CI had not given Rosacci the one hundred fifty dollars ($150.00) from my Wyoming State Buy Funds at that point. The CIs followed Rosacci and Rodriguez to Ralston. When the CIs

arrived at the convenience store parking lot, CI got out of their vehicle and was standing around talking with Rosacci and Rodriguez. CI and Rosacci then got into the CIs' vehicle. Rosacci then had to use the restroom, so he went inside of the store. CI received a text message from Agent Fish that the Agents were no longer able to hear the CIs' conversations being transmitted from the miniature wireless transmitter. Then CI got out to go use the restroom in the store, leaving CI2 with Rodriguez. I then showed CI an unlabeled photograph of Rodriguez. CI positively identified the person depicted in the photographs as "Roy". Once in the restroom, CI was able to get the miniature wireless transmitter to transmit. CI went back out to CI's vehicle and talked with Rosacci and Rodriguez for a while. CI had gotten out of CI's vehicle to smoke. Rosacci and Rodriguez borrowed cigarettes from CI, as a white car arrived. CI gave the one hundred fifty dollars ($150.00) from my Wyoming State Buy Funds to Rosacci. Rosacci and Rodriguez were deciding which one of them were going to go. Rosacci gave the money to Rodriguez. Rosacci and Rodriguez walked over to the white car and met with the driver. After approximately five (5) minutes, Rosacci and Rodriguez got into Rosacci's blue van and went over to the Heart Mountain Pub. They were gone, for approximately five (5) minutes, CI attempted to make the miniature wireless transmitter transmit, as CI spoke with Agent Fish on the phone. After Rosacci and Rodriguez returned, they stated that a Mexican female in a red truck they had met, had to go drop another female off. Rosacci told CI that the Mexican female would be right back. CI decided to wait for a few more minutes to see if CI could obtain the methamphetamine from Rosacci and Rodriguez. Then the white car returned to the convenience store parking lot. Rosacci and Rodriguez get out of the CIs' vehicle and went to the white car to talk. As CI was talking with Rosacci, they saw the red truck go by on the highway. Rosacci told CI the Mexican woman was back. The woman was traveling from the Powell direction, to the back of the Heart Mountain Pub. Rosacci then handed the money, which CI had provided, to Rodriguez and asked if he would just run over and get the methamphetamine. Rodriguez agreed and got into the white car with the female driver. When Rodriguez returned, Rodriguez asked Rosacci if Rosacci just wanted Rodriguez to

[Handwritten annotations in margins:]
- "Sound coached and tipped"
- "Transmitters on and off"
- "Rosacci and CI got in vehicle, not Rodriguez"
- "one mug shot - no line up"
- "not my name"
- "Judy Flores is white"
- "Thought the car was grey. I said the car was grey. Who is the white car with the female driver and where was she parked?"

give the methamphetamine to CI. Rosacci told him that he did. Rodriguez then gave the small plastic bag (evidence item #1) containing the suspected methamphetamine (evidence item #1a) to CI. While CI was talking with Rosacci, Rosacci told CI he would be getting his prescription of thirty milligram (30mg) Oxycodone tablets on October 23, 2014 and that Rosacci was willing to sell the tablets to CI and would charge CI thirty dollars ($30.00) each, but was willing to sell them cheaper if CI purchased a large quantity of them. CI described the methamphetamine that Rodriguez had provided to CI as being contained in a small clear plastic baggie. CI did not open the baggie of methamphetamine and provided that baggie of methamphetamine directly to Agent Fish. Agent Fish then showed CI an unlabeled photograph of Michael Rosacci. CI identified the person depicted in the photograph as Mike Rosacci. CI stated that Rosacci told CI that he would have more methamphetamine available for purchase on the following day. The interview was terminated at approximately 9:38 p.m.

14. At approximately 9:20 p.m., Agent Fish conducted a recorded interview with CI2 regarding the events of the controlled purchase of one gram (1gm) of methamphetamine from Rosacci and Rodriguez in Park County, Wyoming on October 20, 2014. During the course of the interview, CI2 stated substantially as follows: CI2 had heard the initial telephone call between CI and Rosacci, in which Rosacci told CI he had methamphetamine available. CI told Rosacci when he/she was off work the CIs would meet with Rosacci. CI2 then stated Rosacci and Rodriguez had the methamphetamine, but Rodriguez wanted to sell what they had, so they could purchase more methamphetamine. When the CIs took too long to get to Rosacci, Rosacci and Rodriguez left and sold the one gram (1gm) of methamphetamine the CIs were going to purchase in the controlled purchase. The source of methamphetamine, a female, was going to meet them back at the Maverik Country Store in Cody, but decided that she would meet them in Ralston instead. Agent Fish asked CI2 what part in the transaction that the person in the white car had. CI2 stated the female in the white car was also purchasing methamphetamine from the female in the red truck. CI2 believed the female in the white car was Rodriguez's girlfriend and

State v. Michael Rosacci
Affidavit of Probable Cause
Page 6 of 9

*[handwritten annotation: "They don't know what they are talking about"]*

[Handwritten margin annotations: "Rosacci from moment", "impeach", "Racist not credible witness", "They said it was just on its people", "Female now its the grey car", "I wasn't the audio of the female asking for a 'g'", "how many cars were in the grey car", "the females in the grey car", "I want to see surveillance if there was in the middle how did CI see that", "Racial Profile", "CI2 Dosent know me or even know my last name?"]

she was obtaining the methamphetamine for herself. Agent Fish asked CI2 to start over with when they were at the Maverik Country Store in Cody. CI2 stated that Rosacci had been with a Mexican male named "Roy", who CI2 did not know previously. Rosacci and Rodriguez told the CIs they had the methamphetamine, but had sold it, so they could obtain more methamphetamine before they left Cody. The CIs then followed Rosacci and Rodriguez to the convenience store in Ralston and waited for a considerable amount of time. Rosacci and Rodriguez then went over to the Heart Mountain Pub and met with the source in the red truck. The source had another female with her and wanted to go drop her off first. CI2 stated the woman driving the red truck was Rosacci and Rodriguez's source of the methamphetamine. CI2 stated that while they were waiting with Rosacci and Rodriguez, a grey car had pulled up in the store parking lot and provided money to Rosacci and Rodriguez to purchase methamphetamine also. Rosacci and Rodriguez were going to meet the occupants of the grey car in Powell later, after they obtained the methamphetamine for them. CI2 saw the female occupant of the grey car hand money to Rodriguez. CI2 believed the female had provided one hundred fifty dollars ($150.00) for one gram (1gm) of methamphetamine also. When the people in the grey car left, CI2 thought they went back to Powell, to meet with Rosacci and Rodriguez later. CI2 also believed the people in the grey car were from Billings, Montana. Rosacci and Rodriguez left Rosacci's van parked at the Good2Go parking lot and rode back to Powell in the white car. Agent Fish asked CI2 about the first time the white car pulled up in the Good2Go parking lot. CI2 heard the female drive, who was alone, ask for a "g", meaning one gram (1gm) of methamphetamine. Rodriguez got into the white car and they traveled to the backside of the Heart Mountain Pub and picked up the methamphetamine. When they returned to the Good2Go parking lot, Rodriguez provided one gram (1gm) of methamphetamine to CI. CI2 described Rodriguez as a stocky Mexican male, who was wearing glasses. Rodriguez had tattoos on his arms, but CI2 did not see what the tattoos were of. CI2 did not know Rodriguez's last name, but had seen him somewhere before, possibly with Rosacci. CI2 stated the grey car that had arrived at the Good2Go parking lot

a white car, grey car, blue mini van, red truk and none of thees peple can be identified sounds like the CI's are makeing up storys they never met anybody including me but when they are shown a photograph all of the sudden they know it sounds <u>cohearsd</u> or Im being <u>framed</u> by Darrell Steward special agent with the Wyoming Division of criminal investigation. none credibleb witnesses <u>impeachment</u>

they bounded over my case ↑to distric court on pure lies

from all justice cabinet

1 Judge
2 prosecuting attorney
3 special agent with wyoming Division of criminal investigation
4 and public defender
<u>all</u> in my case
I got all the documents to proove my alegations

cruked Justice <u>cabinet</u>

two year old charge why know?

had been occupied by a male and a female, who CI2 believed had been from Billings and had provided Rosacci and Rodriguez with one hundred fifty dollars ($150.00). Agent Fish retrieved an unlabeled photograph of Rosacci and showed it to CI2. CI2 positively identified the person depicted in the photograph as "Mike" Rosacci. Agent Fish retrieved an unlabeled photograph of Rodriguez from the Park County Sheriff's Department and showed it to CI2. CI2 identified the person depicted in the photograph as "Roy" Rodriguez, but stated he had been wearing glasses. Agent Fish asked CI2 what they had talked about while they were waiting for the methamphetamine source to arrive. CI2 stated Rosacci and Rodriguez had talked about how they had been using methamphetamine and how they had been up for four (4) days. They also told the CIs how they had been selling a lot of methamphetamine. CI2 believed they had told the CIs this transaction was their sixth (6th) transaction that day. Agent Fish asked CI2 when CI had given Rosacci and Rodriguez the Wyoming State Buy Funds. CI2 believed it had been after they had gone to the backside of the Heart Mountain Pub. They told the CIs that the methamphetamine was high quality. When Rodriguez returned and got out of the white car, he walked over to the CIs vehicle and handed the methamphetamine to CI through the passenger's side window of the CIs' vehicle. The interview was terminated at approximately 9:34 p.m.

15. Agent Fish maintained custody and control of evidence items #1 and #1a until Tuesday, October 21, 2014, at approximately 9:01 a.m., when she provided the evidence items to me. At approximately 9:31 a.m., I utilized a Narcotics Identification Kit (NIK) test kit, methamphetamine or MDMA (Ecstasy) System, to conduct a field test on a small portion of the suspected methamphetamine from evidence item #1a. The results of the field test indicated a presumptive positive result for the presence of methamphetamine, a DEA Schedule II controlled substance. Agent Fish witnessed the test.

16. I maintained custody and control of evidence items #1 and #1a until Monday, October 21, 2014, at approximately 9:40 a.m., when I packaged them according to established procedures and prepared them for mailing. On Tuesday, October 21, 2014, at

approximately 10:15 a.m., I mailed evidence items #1 and #1a via FedEx to the Wyoming Division of Criminal Investigation, Combined Laboratories, in Cheyenne, Wyoming.

17. On Saturday, March 11, 2015, I received and reviewed a copy of a Wyoming Division of Criminal Investigation, Laboratory Examination Report regarding evidence item #1a, signed by Forensic Analyst Brian E. Goodby and dated March 6, 2015. The report indicated the evidence item had been examined with the following result:

**Lab Item 2**  One (1) plastic sleeve containing white crystalline material (evidence item #1a) was identified as eight hundred eighty two one-thousandths grams (0.882gms), plus or minus four one-thousands grams (+/-0.004gms), of Methamphetamine, a Schedule II Controlled Substance.

18. All of the above-described events occurred in Park County, Wyoming.

19. The foregoing statement is accurate to the best information available to me as of the date of this Affidavit. Investigation of the matter may not be completed, and the foregoing is not to be construed as a statement of all information pertinent to the charge(s) which may be brought in this matter.

DATED: October 25th, 2016.

_____
Special Agent Darrell Steward

STATE OF WYOMING     )
                     ) ss
COUNTY OF PARK       )

The foregoing Affidavit of Probable Cause was sworn to and signed before me personally by Darrell Steward, on October 25, 2016.

_____
Notary Public

My commission expires: October 17, 2017

[SEAL: PAULA J. KUCK NOTARY PUBLIC, COUNTY OF PARK, STATE OF WYOMING, MY COMMISSION EXPIRES OCTOBER 17, 2017]

State v. Michael Rosacci
Affidavit of Probable Cause
Page 9 of 9

Rogelio Rodriguez Jr
PCDC
1402 RiverView Dr
Cody Wy, 82414

LEGAL

UNITED STATES District
Distric of Wyoming office of
2120 Capitol Avenue Room
Cheyenne Wy 82001

LEGAL MAIL (ADD Postage Please)

Important

INDIGENT

© USPS 2013

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT